## Ten Eick v. John and William Simpson.

The purchaser of a tract of land who obtains a deed therefor, is entitled to receive the unpaid purchase money outstanding upon a previous contract for a part of the land executed by his grantor to a third person, of whose rights such grantee has actual or constructive notice. And payment of such purchase money to the grantor, after the holder of the contract has notice of the deed, will be unavailing to the latter.

W. S. executed an agreement for the sale of a small part of his farm to H., and then sold and conveyed the whole farm to J. S., who had notice of the agreement. H. assigned the agreement to T. Both H. and T. knew of the conveyance to J. S. When the purchase money became due, T. paid it to W. S., and then demanded a deed of J. S., who refused to execute it. T. then filed a bill for specific performance against J. S. and W. S. Performance was decreed against J. S., on T.'s paying to him the purchase money and the costs of suit.

After the agreement was executed, W. S. became in equity the trustee of the land for H., having a lien thereon for the purchase money; and on his conveying to J. S., with notice of the trust, J. S. became such trustee in equity in his stead, and the lien for the purchase money passed to him along with the burthen of the trust.

Albany, January 17; New-York, March 2, 1844.

THE bill was filed in March, 1843, to compel the specific performance of a sealed agreement, by which William Simpson contracted to sell and convey a small piece of land, being a part of his farm, to Garnsey Hickox.

The agreement was dated February 27, 1841, and was witnessed by John Simpson. The price was to be paid on or before February, 1843.

The legal title of an undivided half of the farm was in John S., but it was in the sole possession of William S.; and the bill charged that the whole belonged to him, by virtue of a parol partition.

On the 24th of March, 1841, William S. conveyed to John S. the whole of the farm, including the parcel contracted to Hickox. The deed was recorded in May following. At its date, Hickox was in possession of the parcel sold to him, and John S. had notice of the fact.

Hickox knew of the conveyance to John S. about the time it was made.

In August, 1842, Hickox transferred the agreement in question to the complainant, who knew previously that William S. had conveyed the land to John S.

On the 27th of December, 1842, the complainant paid the price of the land to William Simpson. This was done by giving him a note, which he accepted as payment.

In January, 1843, the complainant called on John S. to execute to him a deed of the land contracted by the agreement, and on the third of March, made a formal demand of a deed, with a tender of one drawn up for his execution. John S. refused to execute the deed.

In his answer, John Simpson set up various difficulties between him and William, and the complainant's aiding the latter to injure him. He alleged that the complainant had never offered to pay him the price of the land, and if it had been paid to William, it was paid in the complainant's own wrong.

The bill was taken as confessed by William Simpson.

*A. J. Parker*, for the complainant.

*A. Becker*, for John Simpson.

THE ASSISTANT VICE-CHANCELLOR.—There is no doubt but that John Simpson was estopped from setting up his title to the undivided half of the premises in question, by what took place when the contract for its sale was executed by William Simpson to Hickox, and by his standing by subsequently, when Hickox was laying out money in building upon the premises. And when William conveyed his interest in the farm to John, the latter was bound in equity to fulfil the contract to Hickox. He is chargeable with actual notice of the rights of Hickox, and purchased subject to those rights.

William conveyed to John the whole legal estate, with the appurtenances, and all the "estate, right, title, and interest, "claim and demand whatsoever" of William, "either in law or "equity, of, in, and to the premises, with the appurtenances."

Both Hickox and the complainant knew of this conveyance, in the spring of 1841.

What then were the rights of the parties in reference to this contract, after William conveyed to John ? Hickox was entitled to a deed for the premises contracted, on his paying the price with interest, on or before February, 1843. He was entitled to the conveyance from John ; and why ? Because William had sold and conveyed the land to John, charged with Hickox's equitable right. By that same conveyance, William admits that he received the price of all the land included in it. He thus ceased to have any interest in the subject matter, save his personal liability on the contract, and in that he became the surety for John.

John therefore had the estate, and he had paid for it. Hickox had an equitable claim for a deed of this small parcel, on paying the stipulated price to William and his assigns. John had become " *his assigns*" by the deed of the estate. And when the time arrived for Hickox to pay the price of his purchase, he was bound to pay it to John, as well by the mere letter of his contract, as because he looked to John for a fulfilment of its obligation.

The same duty rested upon the complainant, because he became the assignee of Hickox's liabilities, as well as his rights, in the subject matter ; and he also had actual notice of the conveyance by William to John.

The complainant applied to John as " *the assigns*" of William, for a conveyance. The same act which enabled him to make that application, entitled John to the purchase money. The complainant cannot say that John was " the assigns" for one purpose, and not for the other. After the contract was executed, William became in equity the trustee of the land for Hickox, having a lien thereon for the purchase money. On his conveying the land to John, with notice of the trust, John became such trustee in equity in his stead, and the lien for the purchase money passed to him along with the burthen of the trust.

If a judgment had been docketed against William the day after the contract was signed, it would have become a lien to the extent of the unpaid purchase money. Payment to William

when the money fell due, would not in such case, have availed the purchaser. The judgment creditor on acquiring title through a sale on his lien and a sheriff's deed, would by operation of law be placed in the same situation in reference to this contract, as John Simpson was, by the conveyance to him. Such creditor would be a trustee for the vendee, and bound to convey to him, on receiving the purchase money that was unpaid when his lien attached, and not otherwise. The personal liability of William Simpson on his covenant to convey, would remain the same in each instance. If he had put it out of his power to fulfil his contract, either by suffering a judgment to attach, or by a conveyance making no provision therefor, he would be equally liable to the purchaser for damages on his covenant.

. The complainant's counsel put the case of a negotiable note given by Hickox to William Simpson for the purchase money, which the latter had transferred to a stranger, and asked if in that case John Simpson would have been entitled to claim the purchase money before conveying the land. I answer, certainly not. The taking the note and passing it away, would be held an actual payment as between the vendor and vendee; and the effect would be the same as if in this case, Hickox had paid William Simpson at the time of the execution of the contract. But if in the case put, the note of Hickox had passed into the hands of John, and then William had conveyed the estate to him, (the note being mentioned in the contract,) the complainant could not have claimed a deed from John without paying the note. See *Garson* v. *Green*, (1 J. C. R. 308 ;) *Schnebly* v. *Ragan*, (7 Gill and J. 120.)

The other case supposed, of a transfer to a third person by William, of the money due on the contract, is very different from the case of the commercial paper. The assignee of the contract would stand in William Simpson's stead, so that to collect the purchase money, it would be necessary for him to make a title for the land to the vendee. No prejudice could result to the vendee by such a transfer.

Nor could William sue Hickox for the money after the conveyance to John, (assuming that the contract amounts to a

covenant to pay on the part of Hickox,) for the reason that he thereby put it out of his power to fulfil his own covenant.

I find but one adjudged case precisely in point, but there are several analogous cases and opinions resting upon the same principle. In *Taylor* v. *Stibbert*, (2 Ves. jr. 439,) where a purchaser with notice was held bound in all respects, as the vendor; Lord Rosslyn, Chancellor, says " The rule that affects "the purchaser, is just as plain as that which would entitle the " plaintiff to a specific performance against the original vendor ; " if he is a purchaser with notice, he is liable to the same equity, " *stands in his place*, and is bound to do that which the person " he represents would be bound to do by the decree."

The case of *Daniels* v. *Davison*, (16 Ves. 249, and 17 ibid. 433,) is like the one before me, except that the price, which was payable at a future day, had become due and been tendered to Davison the vendor, before he sold to Cole, the other defendant. The complainant, Daniels, was in possession when Cole bought, so that Cole was charged with notice of his equity. The decree was, that Cole should convey to Daniels on receiving the price which Daniels contracted to pay to Davison.

In *Wall* v. *Bright*, (1 J. & W. 474,) it was decided that an estate which the testator had contracted to sell, passed by a devise of all his real and personal estate to trustees in trust to sell. And Sir Thomas Plumer, the master of the rolls, in his able judgment, shows that although equity considers the vendor after a contract to sell, as a trustee of the estate for the purchaser, yet it is so considered by construction only. And that he is not a mere naked trustee, without any beneficial ownership. He is only a trustee *sub modo ;* the agreement may never be performed, and the absolute ownership may be restored to the legal estate.

If in the case under consideration, the time of payment had been made of the essence of the contract, and by failure to pay at the day stipulated ; Hickox, or the complainant had forfeited their claim to a performance, the whole beneficial interest discharged of the equity, would have remained with the legal estate, in John Simpson.

In *Champion* v. *Brown*, (6 J. C. R. 403,) Chancellor Kent

Ten Eick v. Simpson.

makes use of substantially the same language as that quoted from Lord Rosslyn's opinion in *Taylor* v. *Stibbert, ubi supra,* and in *Oliver* v. *Dix,* (1 Dev. & Batt. Eq. R. 606.) Ruffin, Ch. J. says, "in equity *the estate* is always regarded, until an actual "conveyance, as a security for the purchase money, or such "part of it as has fallen due."

The case of *Gouverneur* v. *Lynch,* (2 Paige's R. 300,) rests on the same principle. The Chancellor there decided that where a mortgage is executed by the vendor, on lands which he has contracted to sell, and the mortgagee has actual or constructive notice of the contract, if the whole purchase money has been paid, the mortgagee will have no claim upon the land ; and if a part of it remain unpaid, he will have an equitable lien to the extent of the unpaid purchase money.

I have already mentioned the same rule as applicable in the case of a judgment, which is only a general lien on the premises contracted to be sold. *Keirsted* v. *Avery,* (4 Paige's R. 15,) is an authority to that effect.

The case of *Hoagland* v. *Latourette,* (1 Green's Ch. R. (N. J.) 254,) also shows that a judgment obtained against the seller, after a contract of sale, and before payment of all of the purchase money, becomes a lien upon the land to the extent of the unpaid purchase money. There the buyer was protected against the judgment, on the ground, that having bought subject to a large mortgage, for the purpose of securing a debt due to him from the seller, which exceeded the price, after deducting the amount of the mortgage ; equity would regard the purchase money as having been paid the moment the contract was complete.

No distinction can be made between a mortgage and an absolute conveyance, with notice ; in their effect upon the equity of the vendee holding a contract. Chancellor Walworth has decided in the case of a mortgagee, and Lord Eldon in the case of an absolute sale and conveyance, that the right to the unpaid purchase money, passes by the mortgage and the conveyance respectively. A lien by a judgment is entirely analogous, and the same thing has been adjudged in reference to the force of such a lien.

On principle and authority there is, therefore, no room to doubt but that the purchase money in question should be paid to John Simpson.

As to costs. The complainant filed his bill before paying, or offering to pay, the price of the land. But it is said that John Simpson made no claim to the price, and gave no notice to either Hickox or the complainant; and when asked if he would convey if the money were paid to him, he answered, he had bought the land at a dear rate, had bought the whole, and would keep it.

As to the claim and notice, no claim was necessary, and the parties had actual notice of the deed to him, which was all that they could ask.

In reference to the inquiry made of him, he might very well distrust the good faith of such an inquiry, when the payment had already been made to William; and he was not bound to demand payment. *Wells* v. *Smith*, (7 Paige, 22.)

I cannot know what John Simpson would have done, if the complainant had offered him the money. No such experiment was made, and there is no evidence which absolves the complainant from making the trial. He was bound to comply with the contract, or to offer a compliance; and until that was done, John Simpson was justified in standing on the defensive.

The complainant is in fault and must pay the costs. John S. will be decreed to convey, on being paid the purchase money and interest, and the costs of suit.